FILED

89 FEB 19 PM 3:18

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

FEB 19 1999

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| MARK R. BARFOOT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NUMBER |
| | ) | |
| THE BOEING COMPANY, | ) | 97-C-2854-NE |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF OPINION DENYING MOTION FOR RECONSIDERATION**

The defendant has sought reconsideration and clarification of the January 22 Order of the Court. Because of the Court's perception that the defendant fully understood the requirements and parameters of the said Order, the Court summarily denied the reconsideration motion on February 2, 1999. In view of certain representations made by defendant in a pending mandamus petition, the Court deems it expedient to memorialize the basis of its denial of reconsideration, basically reflecting its comments at the January 16 hearing on the plaintiff's Motion to Compel.

I.   Background

The plaintiff claims that because of his national origin, Native American Indian, he was subjected to unlawful employment

practices by the defendant from the time of his initial employment in 1990 until his layoff/discharge on April 8, 1994. He contends that he was continually subjected to harassment based on his national origin. According to the complaint, in April 1993, he filed an internal equal employment opportunity (EEO) complaint of discriminatory treatment by his supervisor. In November 1993, the defendant was notified by the Human Resource Department that his complaint had been investigated; and that based on the investigation, the complaint had been denied. The plaintiff's employment relationship with the defendant ended roughly six months later.

He maintains that he was treated differently "on account of his national origin in retaliation for exercising his federally protected rights." (Am. Compl. at 4, ¶ 16). Finally, he alleges that "[b]ecause of the defendant's willful and/or reckless discrimination against the plaintiff based on **race** and retaliation, the plaintiff has suffered...." (*Id.* ¶ 17 (emphasis added)).[1]

---

[1] Although 42 U.S.C. Section 1981 is not referred to in the jurisdictional paragraphs of the complaint, paragraph 4 alleges that the defendant "is an entity subject to suit under..42 U.S.C. Section 1981." In its Answer, the defendant admitted that it is subject to suit under section 1981. Answer at 2. In its Eleventh Affirmative Defense, the defendant asserts that the plaintiff is not entitled to punitive damages under Section 1981. Answer at 5.

In its Answer, the defendant admits that it laid off the plaintiff effective April 8, 1994. (Answer, paragraph 16). Since the defendant has not admitted that the plaintiff has been discharged, the court assumes that he continues on layoff status with the defendant, subject to recall at any time.

The court has entered a Protective Order, which precludes public dissemination of documents produced during discovery.

II.   Discovery Sought by the Plaintiff

On August 4, 1998, the plaintiff served interrogatories and requests for production on the defendant. The defendant responded on October 1, 1998. The instant discovery hassle was brought to a head by the plaintiff's November 10, 1998, Motion to Compel.[2]

The plaintiff seeks by interrogatories (1) the name and race of each person terminated or laid off from the defendant's Huntsville, Alabama facility since April 1992 and the present; (2) the identity, race and employment history of all employees who worked in the same departments as the plaintiff;[3] and a list of all

---

[2] In the motion, the plaintiff pointed out that his complaint alleges "national origin/race discrimination...." Motion To Compel, p. 1.

[3] The plaintiff offered the defendant the option to produce the personnel files of these employees, in lieu of answering the interrogatories. The defendant rejected the offer. Motion, p. 6.

3

employees at the Huntsville facility who have been placed on a 60-day performance plan from January 1992 to the present; (3) a list of all charges filed against the defendant with the Equal Employment Opportunity Commission (EEOC), lawsuits and internal complaints alleging race/national origin discrimination against the defendant between 1992 and the present; (4) a "detail summary" of the investigation of the plaintiff's EEO complaint, including the name and race of persons interviewed, copies of documents utilized in the investigation, and criteria utilized.

By way of requests for production, the plaintiff seeks (1) documents relating to EEOC charges, lawsuits, and internal EEO complaints alleging race/national origin discrimination, non-sexual harassment, and/or retaliation at the Huntsville facility since 1992; (2) documents relating to the investigation of his EEO complaint; (3) the personnel files of all persons who worked in the same departments[4] as the plaintiff between April 1992 and the present.

---

[4] Having been provided no evidence on this issue, the Court assumes that not more than fifty employees have worked in the same departments as the plaintiff.

4

III.  Analysis

The Court has carefully reviewed the discovery requests of the plaintiff.  The requests are reasonably drawn to elicit information concerning the core contentions of the plaintiff's case.  On his claim of disparate treatment, he is entitled to see the personnel records of the white employees who are alleged to have received preferential treatment on the basis of race, as well as the personnel records of the black and Native American employees who are alleged to have received disfavored treatment. Only by reviewing those records, in the exclusive possession of the defendant, can the plaintiff make a determination that either his claims are meritless and should be dismissed, or that they are supported by the defendant's records.  Discovery of those records may also lead to the discovery of testimonial evidence.  If the defendant considers the personnel files of certain employees to be privileged or completely irrelevant, it can ask this Court for an *in camera* inspection of such records and appropriate relief.

The defendant has advanced several arguments to support what the Court perceives to be its unjustified resistance to discovery.  Those arguments will be discussed in turn.

The Assertion That Race Is Not An Issue

The express words of the Complaint itself, as noted earlier, belies the defendant's argument that the plaintiff is not entitled to race discrimination evidence. The Complaint alleges both national origin discrimination and race discrimination. Even if the Complaint did not invoke Section 1981 or specifically allege racial discrimination, a claim of racial discrimination may reasonably be inferred from the plaintiff's allegation that the differential treatment is based on his Native American status. Native Americans are not Caucasians. The plaintiff claims that he was treated differently because he is not white.

While not determinative, the existence of a pattern of discrimination against blacks may well be probative on the issue of discrimination against Native Americans. A white American biased against blacks may also be biased against American Indians for the same reason--neither is a member of the same race as the white American. In the seminal case of *Teamsters v. United States*, 431 U.S. 324 (1977), the Supreme Court treated discrimination against African Americans and discrimination against Spanish-surnamed Americans as being identical. *Id*. at 337-38.

6

Discovery of Personnel Files of Employees Hired
Since the Plaintiff's Layoff

The defendant contends that the plaintiff is not entitled to discovery of the personnel files of employees hired since the plaintiff's employment was terminated. It is clear to the Court that a review of such files may lead to evidence that the articulated reason for the termination of the plaintiff's employment was in fact a pretext. Records relating to the hiring/transfer of employees since the plaintiff's lay-off may also be probative on the *prima facie* prong of the *McDonald Douglas* test. These records may also lead to the discovery of evidence that whites hired after the plaintiff's termination received preferential treatment, consistent with the plaintiff's position that whites generally receive preferential treatment.

Discovery of Other EEO Complaints, Lawsuits, and Charges

The Court does not buy into the defendant's argument that discovery of EEOC charges, lawsuits, and EEO internal complaints filed by other employees cannot lead to the discovery of admissible evidence. For aught that appears, such discovery may reveal the existence of patterns of race/national origin discrimination.

7

While such evidence would not be conclusive in the plaintiff's individual case, it would certainly be probative on the issue of whether the decisions regarding the plaintiff were impermissibly tainted.   Fed.R.Evid. 401; *United States v. Teamsters,* 431 U.S. 324.

The scope of the proposed discovery is properly limited: it covers the two-year period prior to the filing of the EEOC charge, and the two-year statute of limitations period for Section 1981 actions.  The proposed discovery is limited to the Huntsville, Alabama facility--which, in the absence of evidence to the contrary, the Court assumes is not one of the defendant's major facilities.

Internal EEO files and the Attorney-Client Privilege

The defendant seeks to conceal materials regarding its investigation of EEO complaints filed by employees, including the plaintiff, pursuant to company policy.  The disingenuous ground of the defendant's resistance is that it "conducted its internal investigation at the direction of corporate counsel."  (Defendant's Response to Motion to Compel at 10).   The Court finds this representation to be incredible.  As conceded at argument on the

8

Motion to Compel, the internal investigations are prompted by <u>the filing of a complaint of discrimination</u>.

It is not as though internal investigations are initiated when the company has a suspicion of some "discrimination in the air;" and in response its in-house counsel then directs the Juman Resource Department to investigate and report back to her so that she can impart legal advice to the defendant. Quite to the contrary, the Human Resource Department is obligated by company policy to investigate EEO complaints as they are filed by employees. That department would do so even with or without an in-house counsel. Surely, the invasion of in-house counsel into a routine Human Resource Department investigation of an EEO complaint cannot not serve to transform otherwise discoverable documents into privileged ones.

Of course, the defendant is not required to produce materials protected by the attorney-client privilege. To the extent that the internal investigation files embody the advice, consent and directions of its attorneys, such materials need not be produced. To the extent that an investigation was initiated at the request or direction of the defendant's counsel in anticipation

9

of/response to litigation, independent of the filing of an EEO complaint under established company policy, the defendant is not required to produce the materials developed pursuant to such request/direction. And if the defendant has doubt of whether particular documents are privileged, it always may petition the Court for an *in camera* inspection.

The EEO investigations sought by the plaintiff are obviously not self-critical analyses. They are response to criticisms by others--namely, the employees of the company.

It is rather incredible that the defendant would seek to deny the plaintiff access to the very investigation which, it contends, exonerates the company from liability on the plaintiff's EEO complaint.

IV

For all of these reasons, and in view of the Protective Order and the defendant's ongoing right to petition the Court for review of any particular documents which it contends to be privileged, the defendant's motion to reconsider was denied.

DONE this ___19th___ day of February, 1999.

_____
UNITED STATES DISTRICT JUDGE
U. W. CLEMON